**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 5:18-00030-01** |
| | * | |
| | * | |
| **VERSUS** | * | |
| | * | |
| | * | **CHIEF JUDGE HICKS** |
| **DAVID D. DEBERARDINIS** | * | **MAGISTRATE JUDGE HORNSBY** |

---

**NOTICE OF INTENT TO INTRODUCE AT TRIAL INTRINSIC EVIDENCE, OR, ALTERNATIVELY, EXTRINSIC EVIDENCE PURSUANT TO 404(b)**

---

NOW INTO COURT, through the Acting United States Attorney and undersigned Assistant United States Attorneys, comes the United States of America which hereby gives notice of its intent to introduce at trial intrinsic evidence or, in the alternative, extrinsic evidence pursuant to Rule 404(b) of the Federal Rules of Evidence.

## RELEVANT FACTUAL BACKGROUND

Beginning in approximately 2008, the defendant commenced an eight-year scheme wherein he fraudulently obtained millions of dollars from individuals and financial institutions. The scheme centered on purported fuel trading agreements between the defendant, Alon USA Energy, Inc., and other entities including Freeport-McMoran, Inc., Questra N.A., LLC, and FedEx Corporation. The agreements supposedly allowed the defendant and his company, Financial Resources, to buy fuel from Alon and re-sell it at a higher price to the other entities. The defendant claimed

to have obtained this business after helping Albert Saiah, who was allegedly the majority stockholder of Alon's parent company and father-in-law of Alon executive David Wiessman, transport fuel. The defendant represented to others that his business relationship with Alon was both highly confidential and highly lucrative.

The defendant solicited individuals and financial institutions to provide funds for his alleged fuel trading business. He represented to potential investors that the trading profits were virtually guaranteed and that all FR III needed was the upfront cash to buy the fuel and make the trades. The defendant in turn promised interest payments and a guaranteed return of their principal in exchange for their funds. He paid "returns" to his earlier-investing victims with money he acquired from his later-investing victims. The defendant's scheme not only ensured him a constant flow of money, but it also lulled his more well-paying victims into personally guaranteeing what amounted to a $29.5 million loan from PlainsCapital Bank.

The defendant used numerous tactics to advance his fraud scheme. For example, he instructed his IT contractor to create email accounts that closely resembled legitimate Alon accounts. The defendant then assumed the identities of Alon executives and communicated with investors from these fraudulent accounts. The defendant had his management personnel unwittingly prepare fraudulent letters, promissory notes, and guaranty agreements on behalf of Alon, Freeport-McMoran, and FedEx. The documents represented that the defendant had legitimate business relationships with the companies, and that Alon would guaranty any debts incurred by him or Financial Resources. The defendant forged the signatures of Alon,

FedEx, and Freeport-McMoran executives and then presented the documents to potential investors as a way to coerce them into giving him money.

Over the course of his fraud scheme, the defendant approached more than 50 individuals and financial institutions (both private and commercial) about funding his purported fuel trading business. By the time his crimes were uncovered in approximately July 2016, more than half of the aforementioned had fallen victim to his scheme.

## RELEVANT PROCEDURAL HISTORY

On March 29, 2018, the defendant was charged in a thirteen-count superseding indictment with mail fraud, bank fraud, wire fraud, money laundering, and false statement to a bank. [Rec. Doc. 17]. The indictment alleges the defendant "did knowingly execute and attempt to execute" a scheme to defraud individuals and financial institutions beginning on or about 2008 and continuing until at least July 2016. [Rec. Doc. 17, p. 2]. The indictment sets forth various acts in which the defendant engaged to accomplish his fraud scheme including, but not limited to, creating and causing others to create fraudulent contracts and promissory notes, as well as making false statements and omissions "to investors and prospective investors" regarding clients, fuel trading agreements, and related activities. [Rec. Doc. 17, pp. 3-4].

The government recently filed a motion to disqualify attorney Jerald N. Harper from serving as an advocate at trial for the defendant. [Rec. Doc. 149]. The motion was premised upon Harper representing the defendant in fraudulently obtaining a

$2.5 million loan from an individual named Raymond Stafford.[1] In its opposition to the motion, the defense alleged that "the Stafford bridge loan is not part of the Superseding Indictment and would, itself, only be admissible pursuant to Fed. R. Evid. 404(B) and if not excluded based on Fed. R. Evid. 403 (among others)." [Rec. Doc. 155, p. 14].

Despite the defendant's claim, the Stafford bridge loan does not constitute Rule 404(b) evidence because it was part of the scheme to defraud as set forth in the indictment. More specifically, such evidence is intrinsic of the conduct alleged in the superseding indictment. In fact, any attempts by the defendant to fraudulently obtain money for his purported fuel trading business during the relevant time period is intrinsic of the charged conduct and thus outside the scope of Rule 404(b). Even if this Court were to find that such evidence is subject to Rule 404(b), the evidence is admissible to prove motive, intent, plan, knowledge, absence of mistake, and lack of accident.

## LAW AND ANALYSIS

### A. The defendant's attempts to fraudulently obtain funds for his alleged business is relevant, intrinsic evidence of the charged conduct, and all relevant evidence is generally admissible.

Relevant evidence is generally admissible. Fed. R. Evid. 402. The broad authorization for the admission of facts to the jury is only limited by certain defined exceptions and the definition of relevancy itself. Relevant evidence is evidence

[1] As stated in the Motion to Disqualify, the government believes that Harper was an unwitting participant in the defendant's fraud scheme.

having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401.

Rule 403 limits the use of otherwise relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403. Unfair prejudice means an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one. Fed. R. Evid. 403, Advisory Committee Notes.

"Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403." *United States v. Pace*, 10 F. 3d 1106, 1115 (5th Cir. 1993). The Fifth Circuit has previously explained that:

> the discretionary policy against undue prejudice would seem to require exclusion in only those instances where the trial judge believes that there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence …

*United States v. Beechum*, 582 F. 2d 898, 915, fn 20 (5th Cir. 1978) (*en banc)* (internal citations omitted). Therefore, exclusion under Rule 403 is an extraordinary remedy that reviewing courts employ cautiously and sparingly, and only when there has been a clear abuse of discretion. *United States v. Gurrola*, 898 F. 3d 524, 538 (5th Cir. 2018) (internal citations omitted) (emphasis added).

Intrinsic evidence is evidence that is "inexorably intertwined" with evidence used to prove the crime charged. *United States v. Sudeen*, 434 F. 3d 384, 388-389 (5th Cir. 2005); *see also United States v. Williams*, 900 F. 2d 823, 825 (5th Cir. 1990) (evidence qualifies as intrinsic when "the evidence of the other act and the evidence of the other crime charged are inextricably intertwined or both acts are part of a single criminal episode or other acts were necessary preliminaries to the crime charged") (internal quotations and citations omitted). It is generally admissible to allow the jury to "evaluate all the circumstances under which the defendant acted." *United States v. Navarro*, 169 F. 3d 228, 233 (5th Cir. 1999). Where evidence is intrinsic, it qualifies without reference to rule 404(b), which states generally that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." *United States v. Sudeen*, 434 F. 3d 384, 389. Because intrinsic evidence is beyond the scope of Rule 404(b), the government is not legally obligated to give the defense notice of intent to introduce such evidence. *United States v. Penn*, 161 F. 3d 7, 1 (5th Cir. 1998) (per curiam).

The Fifth Circuit has consistently held that, in fraud schemes, evidence of uncharged conduct is intrinsic to the charged conduct. In *United States v. Anderson,* for example, the defendants claimed to be successful investors who wanted to help others with investing. *United States v. Anderson*, 558 Fed. App'x 454 (5th Cir. 2014). They took money from their victims and purportedly invested the funds in stocks. In truth, however, the defendants only invested some of the money. *Id.* at 456-457. They used the remaining funds for personal expenses. *Id.* at 457. Over the course of their

four-year Ponzi scheme, the defendants defrauded their victims in excess of $900,000. *Id.* The defendants were ultimately convicted of conspiracy to commit wire fraud as well as substantive counts of wire fraud. *Id.* at 456.

The defendants argued on appeal that the district court erred in admitting into evidence testimony of seven victims who were not named in the indictment. *Id.* at 462-463. The Fifth Circuit examined the evidence and noted that an unnamed victim referred a named victim to the defendants for investing. *Id.* at 463. Similarly, a named victim reached out to an unnamed victim to discuss the lack of returns on their investments. *Id.* The Fifth Circuit concluded that "[s]uch connections between the named and unnamed victims show that the evidence of the other act is inextricably intertwined with the charged crime." *Id.* The court alternatively held that the evidence would still be admissible through Rule 404(b) because it would go to prove intent and knowledge. *Id.* The Fifth Circuit lastly concluded that the probative value of the evidence was not substantially outweighed by its prejudicial effect or any other Rule 403 dangers. *Id.*

In *United States v. Freeman*, the defendant and his co-defendant created a Ponzi scheme that involved telling investors they would invest their funds in high yield programs or private placement secret trading programs involving overseas trades of financial instruments. *United States v. Freeman*, 434 F. 3d 369, 373 (5th Cir. 2005). The defendants never invested the funds as promised, however, and instead used the money for personal enrichment and to make "lulling payments" to prior investors to make them believe their initial investments were profitable. *Id.*

The defendants were convicted of conspiracy, wire fraud, travel fraud, and money laundering. *Id.* at 372.

Freeman argued on appeal that the district court erred in allowing the government to present evidence of an unindicted Ponzi scheme. *Id.* at 373. The unindicted fraud scheme involved the trading of insulin contracts, which the defendant claimed was not intrinsic to the charged conduct and did not satisfy Rules 403 and 404(b). *Id.* at 374. The Fifth Circuit disagreed, however, and found that the evidence regarding the insulin investors was inexorably intertwined with the charged scheme as a single criminal episode. *Id.* The court explained that "[t]he uncharged offense arose out of the same series of transactions, because the funds were co-mingled and used to make lulling payments to investors from both schemes." *Id.*

Here, like in *Anderson* and *Freeman*, any attempts by the defendant to fraudulently obtain funding for his alleged fuel trading business is inexorably intertwined with the charged conduct. First, in the most general sense, the superseding indictment charges the defendant with "knowingly execut[ing] and attempt[ing] to execute a scheme and artifice to defraud" between approximately 2008 and July 2016. [Rec. Doc. 17, p. 2]. Thus, any attempts (both successful and unsuccessful) by the defendant to fraudulently obtain funds for his purported business between 2008 and July 2016 were in furtherance of this charged conduct.

Furthermore, the superseding indictment charges the defendant with six counts of mail fraud. Three of those counts relate to checks that the defendant mailed to investors "who believed such payments represented a return on their investment,"

while the remaining counts relate to checks the defendant mailed "to third parties who facilitated the scheme and artifice to defraud." [Rec. Doc. 17, p. 7]. The defendant made both the "lulling payments" and the payments to those third parties who facilitated the scheme with funds that he fraudulently obtained from institutions and investors. [Rec. Doc. 17, p. 7]. Therefore, like in *Freeman*, any uncharged conduct regarding the defendant's fraudulent obtainment of funds arose out of the same series of transactions as the charged conduct.

Finally, as iterated above, the defendant engaged in an eight-year scheme to defraud. The discovery tendered to the defense demonstrates that the defendant approached more than 50 individuals and financial institutions about funding his purported fuel trading business, and more than half of them fell victim to his scheme. Many of the victims knew each other, and the defendant routinely communicated with his victims concerning the status of their "investments" via group emails, telephone conferences, and in-person meetings. It is clear that evidence of any uncharged conduct is not only inextricably intertwined with the charged crimes, but is also necessary to allow the jury "evaluate all the circumstances under which the defendant acted." *United States v. Navarro*, 169 F. 3d 228, 233. Evidence of the defendant's attempts to obtain funds will show both how he was able to maintain his fraud scheme for over the course of eight years and also why it was necessary for him to continue to solicit new victims. As such, the probative value of this intrinsic evidence will not be substantially outweighed by the danger of undue prejudice.

**B. Even if the uncharged conduct is not intrinsic of the fraud scheme, it is nevertheless admissible under Rule 404(b).**

As stated above, "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." *United States v. Sudeen*, 434 F. 3d 384, 389. Such evidence is admissible, however, to prove motive, opportunity, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Fed. R. Evid. 404(b).

The Fifth Circuit set forth a two-step process when analyzing whether extrinsic evidence is admissible. *United States v. Beechum*, 582 F. 2d 898, 911. "First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character." *Id.* "Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of [Federal Rule of Evidence] 403." *Id.*

In *Anderson,* in addition to finding that the evidence was intrinsic of the charged conduct, the Fifth Circuit concluded that testimony of victims who were not named in a fraud indictment was admissible through Rule 404(b). *Anderson*, 558 Fed. App'x 454, 463. The Fifth Circuit explained that, by pleading not guilty and requiring the government to prove the elements of the case, the defendants made evidence of their intent and knowledge relevant. *Id.* at 462-463.

Like in *Anderson*, each attempt by the defendant over the eight-year scheme to secure funding for his purported business is evidence of his knowledge, intent, and plan to commit fraud. Furthermore, based upon information and belief, the defendant will not contest at trial that the documents he used to solicit loans were

fraudulent. He will instead argue that those individuals who prepared the documents took advantage of him. In light of this anticipated defense, it may be necessary for the government to demonstrate the defendant's repeated and deliberate leadership role over the course of the fraud scheme to negate the possibility that he committed his crimes by accident or mistake. *See United States v. McCall*, 553 F. 3d 821, 828 (5th Cir. 2008) ("[A]bsence of mistake or accident need not be proved by the government unless raised by the defense."). The probative value of such evidence will not be substantially outweighed by its undue prejudice.

Respectfully submitted,

ALEXANDER C. VAN HOOK
Acting United States Attorney

By: /s/ Jessica D. Cassidy
JESSICA D. CASSIDY, LA Bar #34477
Assistant United States Attorney

*/s/ Cadesby B. Cooper*
Cadesby B. Cooper
New York #5414483
Assistant U.S. Attorney

300 Fannin Street, Suite 3201
Shreveport, LA 71101
(318) 676-3600 – office
(318) 676-3663 – fax