UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 18-cr-030-01-01 |
| VERSUS | CHIEF JUDGE HICKS |
| DAVID D DEBERARDINIS (01) | MAGISTRATE JUDGE HORNSBY |

### REPORT AND RECOMMENDATION

**Introduction**

David D. deBerardinis ("Defendant"), a college-educated businessman born in 1961, was indicted in connection with allegations that he defrauded sophisticated investors of millions of dollars that they invested in a fuel trading business that he touted. The defense filed a Motion to Determine Competency (Doc. 66), which led to a hearing in December 2019 at which the court heard evidence from a Bureau of Prisons ("BOP") psychologist and three experts retained by Defendant. The undersigned concluded, in a report and recommendation, that Defendant does have the mental capacity and competency to assist in his defense and stand trial. Doc. 115; 2020 WL 2153526 (W.D. La. 2020). Chief Judge Hicks adopted that recommendation. Doc. 118; 2020 WL 2130996 (W.D. La. 2020).

Some months later, in August 2020, Defendant filed a Notice of Insanity Defense (Doc. 143). The United States responded with a Motion for Psychiatric Examination (Doc. 145) that asked for Defendant to be examined to determine both his sanity at the time of the offense and his current competency. The Government pointed to the notice as well as

recent communications from defense counsel in which they expressed to the Government a belief that Defendant's mental capacity has deteriorated since his last mental examination, thus calling into question whether he remains competent to proceed. The court then ordered a mental evaluation by Dr. John W. Thompson, Jr., who prepared a written report and testified at a hearing on January 19, 2021.

At a status conference held before the hearing, defense counsel clarified that Defendant is not seeking a "not guilty by reason of insanity" defense under Rule 12.2(a). Rather, he is seeking simply to introduce evidence at trial under Rule 12.2(b)(1) of a mental disease, defect, or other mental condition bearing on the issue of guilt. Counsel confirmed that the only issue before the court at the hearing was the competency of Defendant. The Government stated that any further issues regarding the Rule 12 notice or defense will be handled by motion in limine prior to trial. Doc. 195.

The court received in evidence the written report of Dr. Thompson and heard his testimony, which was subject to cross-examination. After a review of that evidence, and considering the evidence from the original hearing, the undersigned finds that Defendant is competent to stand trial. For the reasons that follow, it is recommended that the court adopt that finding.

**The First Hearing**

Prior to the first competency hearing, Defendant reported to the Federal Medical Center in Fort Worth, Texas from August 14 to 26, 2019, where he was examined for competency by Dr. Sam Browning, who holds a Ph.D. in clinical psychology. Dr. Browning administered a number of tests and interviewed Defendant at length. He

administered the Evaluation of Competence to Stand Trial – Revised (ECST-R), and Defendant performed well.

Dr. Browning diagnosed Defendant with Mild Neurocognitive Disorder, Moderate Alcohol Use Disorder (in early remission), and Moderate Cocaine Use Disorder (in sustained remission). He stated that, while Defendant appeared to experience a decline in several domains of cognitive functioning, his original levels of functioning were estimated to be in the high average range, so even with declines his current levels of cognitive and adaptive functioning fall within the low average to average range. Significantly, Dr. Browning found that Defendant's reduction in cognitive functioning "does not appear to impair his ability to communicate, advocate for himself, or understand the nature of his legal concerns." And there was insufficient evidence, Dr. Browning found, "to suggest he suffers from a major mood disorder, psychotic illness, or other psychiatric condition at this time."

Dr. Browning concluded that Defendant does not suffer from a mental disease or defect that would render him unable to understand the nature and consequences of the proceedings against him or to properly assist in his defense. Thus, Defendant was competent to stand trial. His abilities had declined since his youth, but from a pretty high level to low-average. Defendant's rate of decline was not predictable, and the rate was not clear from the evidence on hand.

The court also heard testimony at the original hearing from Dr. Erin Bigler, Ph.D., who reviewed MRI scans of Defendant's brain that were performed using a Tesla 1.5 machine. He pointed to areas that reflected white matter hyperintensity ("WMH") that he

said were greater than would be expected in a person of Defendant's age (born in 1961). Dr. Bigler said that the presence of WMH in the scans alone could not determine whether Defendant is competent. That would require clinical correlation with what the patient is experiencing.

Dr. Robert Ouaou, who has a Ph.D. in clinical psychology with a specialization in neuropsychology, also testified at the original hearing. He testified about Defendant's claim that a man named Albert Saiah was involved in his fuel trading transactions. As discussed in detail in the original report and recommendation, the defense team and a private investigator could find no evidence that Mr. Saiah existed or that related facts Defendant claimed about him were true. Dr. Ouaou opined that Saiah is a confabulation—a symptom of memory disorders in which made up stories fill in memory gaps with erroneous information—caused by neurodegeneration, which takes place slowly over time.

Dr. George Woods is a neuropsychiatrist who testified as an expert in that field at the original hearing. Dr. Woods opined that Defendant suffers from temporal and frontal lobe deterioration, leading to deficits in memory, problem solving, and accurate reporting.

**Findings After the First Hearing**

The evidence received at the first hearing is described in much greater detail in the original report and recommendation. 2020 WL 2153526. After considering that evidence, the undersigned made the following findings. There is persuasive evidence that Defendant suffers from mild to moderate cognitive decline, whether due to alcohol, physical trauma, drugs, or other cause. The brain scans indicate that he has areas of WMH consistent with such decline. He exhibits a boastful and grandiose personality, and he sometimes acts in

socially inappropriate ways. His IQ has declined over the years, but it remains at a functional level. The Wechsler scale is typically divided into categories, with the "average" category ranging from 80 to 119. Defendant's score of 89 is the top score in the low average category of 80-89.

In spite of Defendant's mental decline, his interviews indicate that he retains a good vocabulary, and he is able to easily communicate with healthcare professionals about his family history, work experience, and the charges against him. He performed quite well on the ECST-R, the only test he was given that is specifically designed to test legal competence. His descriptions of the trial process and roles of the participants were articulate and excellent. There is no evidence that Defendant had actual memory lapses that hindered his ability to participate in the testing or other aspects of these proceedings. He is able to take care of his activities of daily living without any assistance.

Defendant, even with his decline in mental function and mental health issues, was found to be far more competent to stand trial than many of the defendants who routinely come before the court. Those other defendants often have very limited education and language skills, have suffered tremendous physical or psychological trauma, and lack Defendant's clear understanding of the charges and legal system. Yet the applicable law provides that even they possess the minimal requirements of legal competency.

The court noted that the mere fact that a defendant has been diagnosed with a mental disorder or shortcoming does not mean he lacks legal competence. "A defendant can be both mentally ill and competent to stand trial." Mays v. Stephens, 757 F.3d 211, 216 (5th Cir. 2014). This is true even if the mental illness causes delusions. United States v. Garcia-

Vargas, 667 Fed. Appx. 491 (5th Cir. 2016) ("Whether Garcia-Vargas was suffering from delusional disorder is irrelevant, however, if he was both able to understand the nature and consequences of the proceedings and had sufficient present ability to assist counsel in his defense with a reasonable degree of rational understanding."). Mental illness is a factor in evaluating competence, but it is not dispositive.

Competence was likely raised because of Defendant's insistence that he did business with Albert Saiah and a company named Alon. The defense argued that Defendant's refusal to admit that Saiah, and Defendant's relationship with Alon, were fabrications means, when combined with his diminished capacity, that he must be delusional and, therefore, incompetent. The court noted that an alternative explanation is that Defendant knows that his Saiah stories are a pack of lies, and he is refusing to admit it no matter the evidence or the efforts of his own attorneys.

Defendant's experts testified at the original hearing that he suffers from conditions that can cause confabulations or delusions, and Dr. Ouaou opined that Albert Saiah is such a delusion. The undersigned was more persuaded by the testimony of Dr. Browning that this is possible but extremely unlikely. It is particularly unlikely that the only delusions an otherwise functional adult has ever had are those that served the purpose of his complex, multimillion-dollar fraud. And there was no indication that Defendant exhibited similar delusions in other aspects of his life.

A related defense theory offered at the original hearing is that Defendant perhaps originally invented Albert Saiah as part of a fraudulent scheme, but due to mental decline now actually believes the (false) story he told his really true. When asked about this, Dr.

Ouaou said, "It's possible, I would believe; I'm not sure." No witness opined that this is what happened. The undersigned found that a preponderance of the credible evidence did not support that theory. Rather, it showed that it is Defendant's hard-headed obstinacy, not mental health issues, that makes him continue to insist that Saiah is real.

**The Second Hearing**

Dr. Thompson reviewed the reports of the experts, the scans, test results, and the transcript of the first hearing. He also looked at more recent reports from the defense experts. Dr. Bigler wrote in an October 2020 update that he had received an updated MRI performed with a 3 Tesla machine (which is more advanced than the machine that performed the original scans) that provided an improved clinical picture. The equipment was described as much more sensitive in detecting and defining white matter abnormalities, so Dr. Bigler said it was "not surprising that comparing the current 2020 3 Tesla findings show more white matter disease than previously ascertained." He also referred to the results of an MRI Angio, which indicated a possible congenital anomaly affecting the blood supply to regions of the brain. He wrote that Dr. Woods would need to make the clinical correlation, but the affected region corresponds to the medial temporal lobe that is important for memory and emotional regulation.

Dr. Woods wrote in a January 2021 update that he had developed a treatment plan for Defendant, who he said showed signs of cognitive deterioration consistent with his diagnosis of mild cognitive impairment, a potential precursor to dementia. He recommended specific medications to treat bipolar disorder and depression.

Dr. Thompson was accepted as an expert witness in the fields of adult psychiatry, forensic psychiatry, and addiction psychiatry. He is the current chairman of the Department of Psychiatry at Tulane University. Dr. Thompson said that he had performed between 500 and 1,000 legal competency examinations, usually when appointed by a court, and he has found patients not competent about 25% of the time, which is consistent with the national average.

Dr. Thompson examined Defendant in November 2020 by Zoom. He administered the Georgia Court Competency Test, on which a 70 or above is a passing score. Defendant passed "easily" with a score of 96/100. This is consistent with Defendant's strong performance on the ECST-R that was administered by Dr. Browning.

Dr. Thompson diagnosed mild neurocognitive disorder, alcohol use disorder, and history of cocaine use disorder in full-sustained remission. He performed tests designed to assess malingering and concluded that malingering was not strongly suspected, although the single alleged delusion of Albert Saiah was suspect because there were no other symptoms of a delusional disorder. Defendant had only the one alleged delusion, and it happened to serve the purpose of helping to explain his alleged criminal behavior. Dr. Thompson opined that the diagnosis of mild neurocognitive disorder was not a severe mental illness. It did not render Defendant unable to appreciate that his acts were wrong.

Dr. Thompson testified that a person with delusional disorder will often have a grandiose belief, such as that they are friends with the president or a celebrity. When given the opportunity to talk about that person, they are likely to go on and on about them. But when Thompson brought up Albert Saiah near the end of the interview, Defendant did not

have much to say about him. Defense counsel suggested on cross-examination that Defendant now contends that Saiah is dead. Dr. Thompson said that Defendant did not share that belief with him.

Dr. Thompson saw no sign of bipolar disorder in Defendant. He does not have documented manic episodes or major depressive episodes. Thompson testified that bipolar disorder is typically exhibited by age 18. If can manifest later, but chances of it doing so reduce as a person ages. Defendant is now 59.

Dr. Thompson testified that a person with Plaintiff's IQ and level of cognitive functioning is "pretty high" among the persons who typically come before the court system in criminal cases. Defendant exhibited reasonable memory and recollection during the conversation, and his memory could be refreshed with documents. Defendant told Dr. Thompson that he was able to work with his lawyers, who he could name and tell how to get in contact with. He said he did not always agree with them, but he had to work with them and had no issues with them. Defendant easily developed a rapport during the interview. He tended to keep matters light and often joked in response to questions, but he would then give a serious answer when directed. He stated that he still drinks alcohol, about twice a week to intoxication.

Defense counsel pointed out to Dr. Thompson the various tales that Defendant had told about Albert Saiah and related matters that caused his defense team many hours of fruitless investigation. Counsel suggested that this did not indicate cooperation with counsel or being helpful in the defense. Dr. Thompson generally responded that

competency and ability to assist in the defense does not mean that the person who possesses those characteristics will actually be truthful and helpful.

**Applicable Law**

The Constitution "does not permit trial of an individual who lacks 'mental competency.'" Indiana v. Edwards, 554 U.S. 164, 170 (2008). "It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." Drope v. Missouri, 420 U.S. 162, 171 (1975); see also Dusky v. United States, 362 U.S. 402 (1960) ("the test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.") (internal quotation marks omitted) and United States v. Fields, 761 F.3d 443, 467 (5th Cir. 2014). Those constitutional standards are implemented by 18 U.S.C.A. § 4241.

The Fifth Circuit's view is that "[t]here is no question that in federal prosecutions, the government bears the burden of proving the defendant's competence to stand trial by a preponderance of the evidence." Lowenfield v. Phelps, 817 F.2d 285, 294 (5th Cir. 1987), aff'd, 484 U.S. 231 (1988). "Once the defendant's competency has been called into question, the burden is on the prosecution to show by a preponderance of the evidence that the defendant is competent to stand trial." United States v. Moghaddam, 299 Fed. Appx 418, 419 (5th Cir. 2008), citing United States v. Makris, 535 F.2d 899, 906 (5th Cir. 1976).

**Findings and Conclusion**

The undersigned reviewed the evidence and analyzed it in detail in the prior report and recommendation. The court concluded that Defendant suffers from mild to moderate cognitive decline. His IQ has declined over the years, but it remains at a functional level, and his interviews indicate that he retains a strong vocabulary and is able to easily communicate with healthcare and legal professionals. He performed quite well on the ECST-R, the only test given before the first hearing that was specifically designed to test legal competence. Even with his decline in mental function and mental health issues, he presented as far more competent to stand trial than many of the defendants who routinely come before the court with much less formal education, understanding of the charges and legal system, and language skills.

The second hearing was held out of an abundance of caution after defense counsel renewed their concerns about Defendant's condition. The new evidence from Dr. Thompson strongly supports the court's prior finding that Defendant is competent. All aspects of his persuasive testimony and report are consistent with the earlier findings. He also administered a second competency test, the Georgia Court Competency Test, which is specifically designed to test competency for legal proceedings. Defendant passed with flying colors.

Requiring that a criminal defendant be competent has a modest aim: It seeks to ensure that he has the capacity to understand the proceedings and to assist counsel." Godinez v. Moran, 509 U.S. 389, 402 (1993). After considering all of the evidence and arguments, the undersigned remains firmly convinced that more than a

preponderance of the evidence demonstrates that Defendant—despite his limitations—has sufficient present ability to consult with his lawyers with a reasonable degree of rational understanding, and he has a rational as well as factual understanding of the proceedings against him. Defendant is cantankerous and willfully obstinate, but he is *not* incompetent.

Accordingly,

It is recommended that the court enter a finding that Defendant remains legally competent.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b)(2), parties aggrieved by this recommendation have **fourteen (14) days** from the date of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Crim. P. 45(b). A party may respond to another party's objections within **fourteen (14) days** from the filing of the objections. Counsel are directed to furnish a paper copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendation set forth above shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 22nd day of January, 2021.

Mark L. Hornsby
U.S. Magistrate Judge