UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 18-cr-00030-01 |
| VERSUS | CHIEF JUDGE HICKS |
| DAVID D. DEBERARDINIS (01) | MAGISTRATE JUDGE HORNSBY |

### REPORT AND RECOMMENDATION

**Introduction**

David D. deBerardinis ("Defendant") was indicted in connection with allegations that he defrauded sophisticated investors of millions of dollars that they invested in a fuel trading business. The charges arise out of an alleged Ponzi scheme, orchestrated by Defendant, to defraud investors and two federally insured banks. Defendant led investors to believe that his company, Financial Resources, was able to buy fuel from Alon, USA, Inc., an Israeli company, and then resell the fuel to Freeport-McMoran. Defendant represented that he had personal relationships with certain principals at Alon, namely Albert Saiah, which allowed him to earn a virtually guaranteed profit from the fuel trading arrangement. Albert Saiah, however, does not exist. Defendant's investors lost millions of dollars.

Before the court is the Government's **Motion to Disqualify Counsel. Doc. 149**. The Government argues that defense attorney Jerald R. Harper ("Harper") should be disqualified from serving as one of Defendant's attorneys because: (1) Harper is likely to be a necessary witness for the United States on the issue of the existence of a mental

disease, defect, or other mental condition bearing on the issue of guilt; and (2) Harper has an acute conflict of interest because he was actively involved in reviewing, revising, and drafting fraudulent documents to induce one of Defendant's victims, Raymond Stafford ("Stafford"), to loan Defendant $2.5 million, and allowing Harper's participation in the trial would turn Harper into an "unsworn witnesses" regarding many important facts. For the reasons the follow, it is recommended that the Government's motion be granted and that Jerald R. Harper be disqualified from acting as trial counsel (only) for Defendant in this case.

**Law and Analysis**

### A. Introduction

Federal courts recognize a presumption in favor of a defendant's preferred lawyer, but that presumption may be overcome by a demonstration of actual conflict or a showing of a serious potential for conflict. Wheat v. United States, 486 U.S. 153, 164 (1988); United States v. Reeves, 892 F.2d 1223, 1227 (5th Cir. 1990). Relevant ethical standards are consulted in applying this rule. Horaist v. Doctor's Hospital, 255 F.3d 261, 266 (5th Cir. 2001). These standards include this court's local rules, state rules, the ABA's Model Rules of Professional Conduct, and the Model Code of Professional Responsibility. Id. This court has adopted and applies the Louisiana Rules of Professional Conduct. Id.

The Government contends that Defendant contacted attorney Harper in June 2015 about providing legal representation to him personally and to one of his companies that was involved in the fuel trading business. Harper then began performing legal work for Defendant and the company, served as a registered agent for a related company, and

engaged in email communications with who he believed to be the general counsel for Alon. Harper allegedly assisted Defendant in obtaining a $2.5 million loan from Raymond Stafford, which Defendant did not repay.

The Government did not charge the Stafford loan as a separate wire fraud count, but it contends that securing the loan was part of Defendant's execution of the overall scheme and artifice to defraud. Harper prepared a note, guaranty agreement, resolution, and other documents in connection with the loan, which took nearly two weeks to execute. Defendant has given notice (Doc. 199) that he intends to offer evidence relating to a mental disease or defect or other mental condition bearing on the issue of his guilt. The Government contends that Harper's close relationship with Defendant during these key events makes him a witness relevant to Defendant's mental status during the course of his alleged criminal behavior.

### B. Lawyer-Witness Rule

Rule 3.7 of the Model Rules and Rule 5-102 of the Model Code prohibit a lawyer from representing a client at trial if the lawyer may testify. Rule 3.7 provides:

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:

   (1) the testimony relates to an uncontested issue;

   (2) the testimony relates to the nature and value of legal services rendered in the case; or

   (3) disqualification of the lawyer would work substantial hardship on the client.

> (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

Rule 5-102 provides:

> (A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue the representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5-101(B) (1) through (4).
>
> (B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

The Fifth Circuit uses the following test to apply the lawyer-witness rule: (1) Is the lawyer a necessary witness? (2) Has the moving party sufficiently alleged prejudice? and (3) Will disqualification impose a substantial burden on the client that is not outweighed by prejudice and other policy considerations? Horaist, supra at 266-267.

The Government has satisfied the undersigned that Harper is likely to be a necessary witness at trial because his testimony will not be available from another source. Id. at 267. Defendant disputes this and argues that there are dozens of others who could also testify regarding Defendant's mental condition. However, in acting as a middle man between Defendant and Stafford, Harper will have unique knowledge regarding Defendant's mental condition *immediately prior to and during that particular transaction*. Harper apparently drafted the promissory note, the guaranty agreement, and Defendant's corporate resolution. Harper unwittingly included representations regarding Defendant's alleged (but forged)

relationship with Saiah and Alon.  In short, Harper worked with Defendant, had regular contact with Defendant, and is perhaps the best person to describe Defendant's mental condition during the time of the Stafford transaction.

Turning to prejudice, the Fifth Circuit considers a number of factors, including the appearance of impropriety, the possibility that a specific impropriety will occur, and whether the likelihood of public suspicion from the impropriety outweighs any social interests served by the lawyer's continued participation in the case.  F.D.I.C. v. US Fire Ins. Co., 50 F.3d 1304, 1314 (5th Cir. 1995).  Harper's participation at trial as a lawyer-witness will certainly confuse the jury and the public.  Harper's testimony about Defendant's mental condition and the drafting documents for the Stafford transaction will very likely conflict with Defendant's supposed defense that his mental state led to his being taken advantage of by others.

This case has also received considerable public attention.  The public must know that this trial will be conducted fairly and justly.  If Harper is both a witness (called by the Government) and an attorney for Defendant, the public will likely be confused about his conflicting roles.  Will the jury assign more weight to what Harper says and does in the courtroom after taking the oath of a witness?  This concern is mitigated somewhat by the defense's statement that Harper will not present the opening statement or closing argument at trial.  Doc. 155, p. 28.

Turning to the hardship factor, the undersigned finds that Harper's disqualification will not work a substantial hardship on Defendant.  Here, the Government only seeks Harper's disqualification as counsel *during the trial*.  The Government does not seek to

disqualify Harper from pretrial preparations or pretrial hearings. Harper remains free to sit at counsel table during the trial so that Defendant may confer with him. And this limited disqualification would not cause any delay or prejudice to Defendant, because he is still represented by other lawyers, including Harper's law partner, Anne Wilkes, and lead counsel, James "Jim" Boren, who enjoys a well-deserved reputation as one of the best criminal defense lawyers in Louisiana. Mr. Boren has taken the lead in all pretrial hearings to date.

### C. Unsworn Witness

The Government also argues that the court should disqualify Harper as trial counsel because he would be an unsworn witness for Defendant. The undersigned agrees.

In United States v. Locascio, 6 F.3d 924 (2nd Cir. 1993) (the John Gotti case), the Second Circuit stated that an attorney acts as an unsworn witness when his relationship to his client results in his having first-hand knowledge of the events presented at trial. Id. at 933. According to the court:

> Even if the attorney is not called, however, he can still be disqualified, since his performance as an advocate can be impaired by his relationship to the events in question. For example, the attorney may be constrained from making certain arguments on behalf of his client because of his own involvement, or may be tempted to minimize his own conduct at the expense of his client. Moreover, his role as advocate may give his client an unfair advantage, because the attorney can subtly impart to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross examination. See United States v. McKeon, 738 F.2d 26, 34–35 (2d Cir. 1984) (requiring disqualification where attorney would be essentially acting as both an advocate and a witness); United States v. Cunningham, 672 F.2d 1064, 1075 (2d Cir. 1982) (upholding disqualification where an attorney would act as an unsworn witness for defendant); Castellano, 610 F.Supp. at 1167 (finding that attorney's appearance at counsel table would itself distort the factfinding process).

Id. The Government plans to introduce as evidence the documents that Harper drafted, and it expects to call Stafford as a witness regarding his interactions with Harper and Defendant. Harper's direct (but unwitting) involvement in the Stafford loan fraud creates a real risk of his injecting his knowledge (and unsworn testimony) into his evidentiary arguments and examinations of witnesses. See, e.g., United States v. Evanson, 584 F.3d 904 (10th Cir. 2009).

### D. Govt. Ex. 2, Timing, and Other Issues

Defendant disputes many of the statements made by the Government in its motion and reply (particularly the discussion of Govt. Ex. 2 to the Government's reply brief), and Defendant has filed a sur-reply that addresses those statements. The undersigned has endeavored to steer clear of those disputed factual assertions in resolving this motion. But the undersigned does not agree with Defendant's suggestion that the Stafford transaction is merely tangential to the allegations of the superseding indictment.

Defendant also objects to the timing of the Government's motion, referring to the motion at one point as premature, but also arguing that it should have been filed much sooner.[1] Neither argument is persuasive. The Government's concerns regarding Harper's participation as trial counsel are valid, and the undersigned finds they were timely and properly raised. And given the limited nature of the disqualification recommended herein, the potential prejudice to Defendant is minimal.

---

[1] The motion was filed when trial was just a few months away. However, this case and many others have been rescheduled due to COVID-19.

While the briefing of this motion was underway, the Government filed its Rule 404(b) notice. Doc. 158. Defendant seeks this court's guidance on how to respond. The undersigned suggests that Defendant file a motion in limine far enough in advance of the pretrial conference that it will be fully briefed and ready for discussion at the pretrial conference.

The Government asks the court to conduct a hearing to determine the need for written waivers regarding Harper's representation of Defendant. The undersigned declines that invitation. Harper is a very knowledgeable and experienced attorney, and the court fully expects that he will comply with all applicable rules regarding any need for waivers.

**Conclusion**

The undersigned is sensitive to the argument raised by Defendant about the Government using disqualification as a weapon. But there is no indication of that happening here. Indeed, the limited disqualification sought by the Government cuts against that concern.

Considering the likelihood that (1) Harper will be a witness regarding Defendant's mental health and/or (2) evidence of the Stafford transaction will be admitted,[2] the best exercise of this court's discretion is to disqualify Harper from acting as trial counsel for Defendant.

---

[2] Based on the undersigned's experience and review of the F.R.E. 404(b) notice, it is likely that evidence pertaining to the Stafford transaction will be admitted either as part of the indictment or pursuant to F.R.E. 404(b). However, Defense counsel should not be dissuaded from arguing otherwise to Chief Judge Hicks.

Accordingly,

It is recommended that the Government's Motion to Disqualify Counsel (Doc. 149) be granted and that Harper be disqualified from acting as trial counsel for Defendant.

It is further recommended that Harper be allowed to continue to act as Defendant's attorney in all pretrial proceedings in this case.

It is further recommended that Harper be allowed to sit with Defendant during the trial to confer with Defendant as appropriate.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b)(2), parties aggrieved by this recommendation have **fourteen (14) days** from the date of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Crim. P. 45(b). A party may respond to another party's objections within **fourteen (14) days** from the filing of the objections. Counsel are directed to furnish a paper copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendation set forth above shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 28th day of January, 2021.



Mark L. Hornsby
U.S. Magistrate Judge